FILED'10 JAN 27 14:00USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**UNITED STATES OF AMERICA,**

               Plaintiff

    and

                                     Case Number CV 08-3074-CL

**FAIR HOUSING COUNCIL OF OREGON,**

               Plaintiff-Intervenor             **ORDER**

    v.

**VIRGINIA RUTH HADLOCK**

               Defendant.

Clarke, Magistrate Judge:

    Plaintiff United States of America and Plaintiff-Intervenor Fair Housing of Oregon ("Plaintiffs") bring this action against Defendant Virginia Ruth Hadlock ("Defendant") for violation of the federal Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("FHAA"), and the Oregon Fair Housing Act. Plaintiffs also allege unlawful trade practices and negligence under Oregon law. (Compl. in Intervention ("Compl.") ¶ 1.) They seek monetary, declaratory and injunctive relief.

    This court has jurisdiction under 28 U.S.C. § 1331 for claims arising under the laws of

the United States, under 42 U.S.C. § 3612(o) for violation of the Fair Housing Act, and under 28 U.S.C. § 1367(a) for supplemental jurisdiction of state law claims.

Plaintiffs filed this motion for partial summary judgment[1] arguing there are no genuine issues of material fact as to whether Defendant violated the FHAA, specifically statute 42 U.S.C. § 3604(a) and (c).  (Mem. in Supp. of Pls.' Joint Mot. for Partial Summ. J. ("Pls.' Mem.") 2.)  For the reasons set forth below, Plaintiffs' motion (#48) is granted.

## I.    Standards for Summary Judgment

Pursuant to Rule 56(c), summary judgment "should be rendered, if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact.  Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002).  An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party must carry the initial burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).  The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact.  Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  In assessing

---

[1] The court does not address Plaintiffs' claims for violation of Oregon Fair Housing Act, unlawful trade practices, and negligence.

whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. <u>Allen v. City of Los Angeles</u>, 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the non-movant. <u>Gibson v. County of Washoe</u>, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); <u>Auvil v. CBS "60 Minutes"</u>, 67 F.3d 816, 819 (9th Cir. 1995); <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 & n.4 (1986). Summary judgment should be granted for the movant, if appropriate, in the absence of any significant probative evidence tending to support the opposing party's theory of the case. Fed. R. Civ. P. 56(e); <u>THI-Hawaii, Inc. v. First Commerce Fin. Corp.</u>, 627 F.2d 991, 993-94 (9th Cir. 1980); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 290 (1968). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. <u>Devereaux</u>, 263 F.3d at 1076.

## II.    Facts

Defendant owns at least three single-family dwellings that she has rented to various individuals over the past several years. She is involved in the renting of these dwellings and collecting rent. (Pls.' Concise Statement of Facts in Supp. of Pls.' Joint Motion for Partial Summ. J. ("CSMF") ¶ 1.)

On approximately June 7, 2007, Ms. Jennifer Johnson Stevens contacted Defendant and

Order    3

inquired about one of her recently advertised rentals. (CSMF ¶ 3.) Plaintiffs assert that at the

beginning of the phone conversation, Defendant asked Ms. Stevens if she had any children and

further told her that she was not renting to anyone with children. (CSMF ¶ 4.) Defendant denies

these allegations explaining that she does not recall with clarity the conversation. She admits

that she always asks prospective renters the number of people that will be living in the rental.

(Def.'s Response to Pls.' Mot. for Partial Summ. J. ("RCSMF") ¶ 4.) Shortly after this

conversation, Ms. Stevens contacted the Fair Housing Council of Oregon ("FHCO") because she

was concerned that Defendant was discriminating against renters with children. (CSMF ¶ 5.)

The FHCO is a private, non-profit corporation located in Portland, Oregon, which

promotes equal opportunity in the renting, purchasing, financing, and advertising of housing and

elimination of all forms of illegal housing discrimination. The FHCO attempts to eliminate

housing discrimination by investigating allegations of discrimination and conducting testing of

housing facilities to determine whether equal opportunity housing is provided. (CSMF ¶¶ 6-7.)

The FHCO conducted testing of Defendant's practices from July 26 through July 28,

2007, to determine if violations of the FHAA had occurred or were occurring. (CSMF ¶¶ 8-9.)

As part of its investigation, several testers called Defendant inquiring about rental property.

Tester Gamma[2] reported that Defendant asked the age of his son. He reported that Defendant

stated, "I don't know about that. About having a son there at the house." (CSMF ¶ 10.)

Plaintiffs also argue Defendant told a HUD investigator that she "wouldn't have an eight year-old

kid live there because he would be bringing kids to the house all the time and nobody was going

to be there." Defendant also stated that "the kids would burn up the house" and did not want

---

[2] Testers were assigned pseudonyms for security purposes. (Aff. of Dennis Steinman in Supp. of Pls.' Joint Motion for Partial Summ. J., Ex. 3, ¶ 6.)

Order    4

children at the house alone. (CSMF ¶10.)

Tester Alpha called to inquire about a rental for herself and her eight year-old daughter. Defendant told Alpha that she had a one bedroom house and "wouldn't care for a child left alone." She asked Alpha who would care for the child while she was at work. After learning that Alpha's mother would watch her child, Defendant asked for the name and employment status of Alpha's mother. (CSMF ¶ 11.)

Tester Beta called inquiring about a rental, and she was asked how many were in her family. Upon learning that Beta was single, Defendant did not ask any further questions about family. Defendant also noted in describing the house, "It's just a small house. I won't rent to families." (CSMF ¶ 12.)

Defendant responded similarly when tester Epsilon called about a rental. Defendant asked about the number of people in Epsilon's family, and upon hearing Epsilon was single, Defendant noted, "[g]ood because it's no good for children because it's just a one bedroom." In other conversations with investigators, Defendant has also said that the house was not good for children because of the heavy traffic on Main Street. (CSMF ¶ 13.)

Defendant argues that these conversations only show that she is concerned about the welfare of children. She denies that her comments express a discriminatory attitude. (RCSMF ¶ 7.) She explains that she was only expressing her personal opinions and did not discriminate, pointing out that she still invited callers to view the house. (RCSMF ¶ 10.)

FHCO filed a complaint with the U.S. Department of Housing and Urban Development ("HUD") alleging that Defendant discriminated against families with children in the rental of her properties on July 28, 2007. On January 16, 2008, a HUD investigator interviewed Defendant

Order   5

and her husband Fred Hadlock, who is now deceased. In that interview Defendant confirmed

that she feared a young child would burn her house, and she admitted to telling this fear to one

tester. (CSMF ¶ 16.)

Plaintiff United States filed its complaint in U.S. District, District of Oregon, on July 9,

2008, and Plaintiff-Intervenor FHCO filed its motion to intervene on September 23, 2008.

Parties soon began discovery.

At a deposition held on April 29, 2009, Defendant explained that she did not want to rent

to a man and his child because she is concerned about pedophiles. She has this fear even though

she has not had a problem with pedophiles on any of her properties. Also at deposition,

Defendant admitted that she has never been interested in renting her 2234 Main Street property to

families, noting that it is right next door to her. She stated, "I would not rent to them [renters

with children], that's put it plain; I would not rent to them, no." (CSMF ¶ 18.) She also later

confirmed that she has rented to many families in the past. (RCSMF ¶ 13.)

Discovery was completed on July 13, 2009, and Plaintiffs filed this motion for partial

summary judgment on August 24, 2009. The court heard oral argument on January 19, 2010.

### III.    FHAA Protects the Class of Familial Status from Housing Discrimination

FHAA prohibits discrimination in the sale, rental, or financing of dwellings based on

race, color, national origin, religion, sex, familial status, and handicap. Familial status

discrimination refers to discrimination against parents or other custodial persons domiciled with

children under the age of 18. 42 U.S.C. § 3604; see City of Edmunds v. Oxford House, Inc., 514

U.S. 725, 728 n. 1 (1995). Persons who do not own more than three dwellings are exempted

from this act. 42 U.S.C. § 3603(b).

Order   6

Specifically it is unlawful

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make available or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
. . .
(c)  To make, print or publish, or cause to be made, printed, or published any notice, statement or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(a) & (c).

The Code of Federal Regulations further explains that "steering practices" are prohibited under the FHAA.  These include "[d]iscouraging the purchase or rental of dwelling because of . . . familial status . . . by exaggerating drawbacks or failing to inform any person of desirable features of a dwelling or of a community, neighborhood, or development." 24 C.F.R.  § 100.70(c)(2).  Also prohibited is "[c]ommunicating to any prospective purchaser that he or she would not be comfortable or compatible with existing residents of a community, neighborhood or development because of . . . familial status."  24 C.F.R.  § 100.70(c)(3).  It is unlawful to express to "prospective sellers or renters or any other persons a preference for or limitation on any purchaser or renter because of . . . familial status."  24 C.F.R.  § 100.75(c)(2).

The FHAA protects all persons, whether or not they are prospective renters.  As the Supreme Court explained in Havens Realty Corp. v. Coleman,"Congress has thus conferred on all 'persons' a legal right to truthful information about available housing." 455 U.S. 363, 374 (1982).  Havens addressed the issue of standing and determined that testers have standing to sue for violations under the act.  "'Testers' are individuals who, without intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of

Order    7

unlawful steering practices." Id. Thus, the FHAA is violated when any person, including testers, is discouraged from renting a dwelling because of familial status or is subject to discriminatory statements: "[t]hat the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the fact of injury within the meaning of [the FHAA]." Id. Fair Housing Organizations, such as the FHCO, have standing to sue so long as the organization can demonstrate (1) frustration of its organizational mission and (2) diversion of resources to combat the particular housing discrimination in question. Fair Housing of Marin v. Combs, 285 F.3d 899, 905 (9th Cir. 2002).

       To prove a defendant violated the FHAA, a party shows that the housing policy of the defendant is facially discriminatory, for example that the policy applies less favorably to a protected group, such as familial class. Community House Inc. v. City of Boise, Idaho, 468 F.3d 1118, 1123 (9th Cir. 2006). To establish a familial status claim under the FHAA, a plaintiff must present evidence (1) that defendant made a statement, (2) that statement was made with respect to the sale or rental of a dwelling, and (3) the statement indicated a preference, a limitation, or discrimination against the plaintiff on the basis of the status as a parent. White v. HUD, 475 F.3d 898, 904 (7th Cir. 2007); 42 U.S.C. § 3604(c).        To determine whether a statement indicates impermissible discrimination on the basis of familial status, an ordinary listener standard is used. The Seventh Circuit explained in Jancik v. Dept. of Housing and Urban Development, "the statute is violated if an ad for housing suggests to an ordinary reader that a particular protected group is preferred or dispreferred for the housing in question." 44 F.3d 553, 556 (7th Cir. 1995) (citations omitted). No showing of subjective intent is necessary to establish

Order    8

a violation. Id.  "[A] plaintiff need not prove the malice or discriminatory animus of a defendant to make out a case of intentional discrimination where the defendant expressly treats someone protected by the FHAA in a different manner than others. . . . Thus, a plaintiff makes out a prima facie case of intentional discrimination under the FHAA merely by showing that a protected group has been subjected to explicitly differential -- i.e. discriminatory -- treatment." Bangerter v. Orem City Ordinance, 46 F.3d 1491, 1501 (10th Cir. 1995).

Policies that are facially neutral may violate the act.  "If the result of this policy is a disparate impact on a protected class, facial neutrality will not save the restriction from violating the act." United States v. Badgett, 976 F.2d 1176, 1179 (8th Cir. 1992) citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).   In Badgett, the Eighth Circuit found a prima facie case for discrimination where the leasing agent of an apartment complex volunteered discouraging information to a potential renter who was of a protected class.  Specifically, the agent told the mother that the complex had no playground and there were no other children to be playmates for a prospective renter's child.  Badgett, 976 F.2d at 1180.  Given the evidence, it was understandable why a prospective renter did not want to view the units.

The Ninth Circuit has recognized two circumstances in which facial discrimination may be acceptable.:  (1) the restriction benefits the protected class or (2) the restriction responds to legitimate safety concerns raised by the individuals affected, rather than being based on stereotypes. Community House, 468 F.3d at 1125.

## IV.   Defendant Violated the FHAA With Discriminatory Statements and Policies

Plaintiffs present evidence that Defendant has violated the FHAA through her discriminatory statements and policies.   Even when taking all the evidence in the light most

Order   9

favorable to the Defendant, Defendant has not met her burden to show there is a genuine issue of material fact.

### A.    Defendant Is Subject to FHAA and FHCO Has Standing to Sue

As a preliminary matter, Defendant is subject to the FHAA. She is in the business of renting dwellings because she has been engaged in transactions of renting, such as collecting monthly rent over at least the last twelve months. She does not meet the exemption provided in the FHAA because owns three or more dwellings in addition to her own. 42 U.S.C. § 3603(b) & (c); (Aff. of Dennis Steinman in Supp. of Pls.' Joint Mot. for Partial Summ. J. ("Steinman Aff."); Ex 1. 8-11.)

In addition, the FHCO has standing to sue. It has demonstrated both factors required by the Ninth Circuit of frustration. See Fair Housing Counsel of Marin County, 285 F.3d at 905. In an affidavit, Moloy Good, the Executive Director of the FHCO, asserted that Defendant's practices and policies have frustrated the organization's mission to promote equal opportunity in the renting, purchasing, financing and advertising of housing. He declared,

> [a]s a result of having to conduct the tests FHCO suffered injury to its ability to carry forward its mission of eliminating housing discrimination through enforcement and education. FHCO has suffered a drain on its resources from both a diversion of its resources and frustration of its mission. FHCO suffered economic damages in staff pay in the amount of $6,569.00. Additionally FHCO projects $18,620.00 in frustration of mission damages, namely remedial education and outreach including brochure distribution and local area landlord training.

(Steinman Aff., Ex. 2, ¶ 6.)

### B.    Defendant Violated § 3604(c) in Making Discriminatory Statements

Plaintiffs have provided evidence that Defendant made statements with respect to her rental property that indicated an unlawful preference in her conversations with potential renters,

Order    10

testers, investigators, and at deposition.  An ordinary listener would conclude that Defendant dispreferred families in her rentals.

Defendant made many discriminatory statements.  The first statement at issue here, was in a conversation Defendant had with Ms. Johnson Stevens.  Defendant told her that she would not rent to families that Plaintiffs began investigating her policies.  (Steinman Aff., Ex. 4 ("Stevens Decl."), ¶ 3.)  In the following investigation by the FHCO, Defendant treated callers with families differently by asking specific, personal questions about their families.  Gamma reported that Defendant asked about his marital status and the age of his son.  She made the statement, "I don't know about that. About having a son there at the house."  (Steinman Aff., Ex. 5,  Ex. A.)  Gamma explained that Defendant reiterated her concern about having a child in the house, adding that it was only one bedroom.  Defendant also asked who would be caring for the child when Gamma was at work, wanting to know the name when she heard it might be Gamma's mother.  (Steinman Aff., Ex. 5,  Ex. A.)

Defendant treated prospective renters who did not have families differently.  When a tester of the same age and sex called, Defendant did not inquire about his family or ask personal questions once she learned that he was not a parent.  Also notably absent were any statements to discourage him from renting.  (Steinman Aff., Ex. 6, Ex. A.)

Tester Alpha who was a single mother had a similar experience as Gamma had with Defendant.  Defendant told her that she would not care for a child left home alone and wanted to know the name of the person who would watch her child.  Alpha told her it would likely be her mother, and Defendant asked for her name and place of employment.  (Steinman Aff., Ex. 7, Ex. A.)

Order   11

Tester Beta had a different experience when asking about the rental for only herself,

Defendant did not ask any further questions. However, Beta reported that Defendant made the

statement, "It's just a small house. I won't rent to families." (Steinman Aff., Ex. 8, Ex. A.)

Defendant made a similar statement to tester Epsilon. She reported Defendant said the

house was "no good for children because it's just one bedroom." (Steinman Aff., Ex. 9, Ex. A.)

Defendant also made discriminatory statements to HUD investigators. Defendant

explained that she was concerned about a child potentially setting fires, and she asserted one of

her properties was not good for children because of the heavy traffic. (Steinman Aff., Ex. 12 , ¶¶

9 & 11 .)

Plaintiffs also offered evidence of discriminatory statements that Defendant made during

her deposition. She stated, "I never have been interested in renting to children. It's right next

door to me." (Steinman Aff., Ex. 1, 19.) She also stated that she would not choose to rent to

families: "I would not rent to them, that's put it plain; I would not rent to them, no." (Steinman

Aff., Ex. 1, 19.)

### C.    Defendant Violated § 3604(a) by With her Discriminatory Policies

Plaintiffs provided evidence that Defendant used a discriminatory policy when renting her

property. In conversations with potential renters, Defendant made statements to discourage

families from renting.

Defendant stressed the small size of the rental property to prospective renters with

families, suggesting the rentals were not appropriate for them. For instance, when she talked

with Gamma about his son, she stressed that the house only had one bedroom. (Steinman Aff.,

Ex. 5, Ex. A.) She unequivocally told Epsilon that the house was no good for families because it

Order    12

only had one bedroom. (Steinman Aff., Ex. 9, Ex. A.) She also explained at her deposition her

belief that the house was not appropriate for children because of the speeding cars on Main

Street. (Hadlock Depo. 16.)

Also provided was evidence that Defendant talked about her dispreference of families to

her step-children and step-grandchildren.[3] Her stepson Michael Hadlock declared, "many of the

conversations with Ruth had to do with damage that was done to the rental properties by tenants.

Ruth said to me on more than one occasion, 'If I can keep kids out of my rentals, I'm going to do

it.'" (Steinman Aff., Ex. 10 ("Michael Hadlock Decl.") ¶ 5.) Mr. Hadlock also reported that she

has said, "I just won't rent to families with rug rats. They are destructive." (Michael Hadlock

Decl. ¶ 5.)

Defendant's step-granddaughter Heidi Tena remembered similar conversations. Ms. Tena

explained that she had talked with Defendant about the possibility of renting one of the properties

for herself and her two children. Ms. Tena reported that Ms. Hadlock refused to show her the

house stating, "the house is no good for you because you have kids. It's not big enough for you

and your kids." (Steinman Aff., Ex. 11 ("Tena Decl.") ¶ 4.) On a later occasion, Defendant

talked with Ms. Tena about her search for tenants for one rental. Defendant admitted that she

had possible renters but would not rent to them because "[i]t's a one bedroom house and I won't

rent that place to someone with children." (Tena Decl. ¶ 5.)

Plaintiffs assert that not only did Defendant discourage potential families by telling them

---

[3] Defendant argues that evidence from Mr. Hadlock and Ms. Tena should not be considered because of their stained relationship with Mrs. Hadlock. "Defendant has never been close with the two sons of her late husband, nor with any of their children. As such few conversations and fewer visits ever took place. The distance since Fred Hadlock, Sr.'s death have illustrated this, as the sons of Mr. Hadlock, Sr. have raised legal issues with Mrs. Hadlock's being allowed any inheritance from her late husband." (Def.'s Mem. 14.) Defendant denies these conversations took place, she only offers her denial as evidence to dispute. Even if the court did not consider these statements, however, the decision would be the same.

Order    13

they would not be comfortable in a small one bedroom but she also failed to point out the close proximity to schools.  To potential renters with children, this would be a desirable feature of the house.  Prohibited actions under the FHAA include steering practices such as discouraging renters because of familial status by exaggerating drawbacks or failing to inform any person of desirable features.  24 C.F.R. § 100.70(c)(2).

Plaintiffs have met their initial burden of proof.  Given this evidence, no reasonable juror could find in favor of Defendant.

### D.   Defendant Has Not Shown a Genuine Issue of Material Fact

To survive on summary judgment, Defendant must offer evidence that there is a genuine issue of material fact. Defendant generally provides unsupported arguments that she is not subject to the FHAA and that her statements were not discriminatory because she never intended to discriminate.  This does not meet the Defendant's burden.

Defendant asserts that her policies are not discriminatory but even if the court deemed them to be, they would meet an exception.  The Ninth Circuit has recognized a facially discriminatory policy may be permissible when the restrictions protect the protected class or when the restrictions respond to a legitimate safety concern.  In Community House, the Ninth Circuit found that the City had not provided support to establish that the policy at issue benefitted the protected class.  The City argued that providing a mens-only homeless facility may discriminate against women, but it was permissible because it was for the safety of the protected class, which here was women and families.  The City offered only an affidavit from one individual who had been working with the homeless population.  468 F.3d at 1126.  The court noted, "the City did not submit a single police report, incident report, or any other documentation

Order   14

that supported any safety concerns." Id.

Defendant offers little more than her personal opinion here to support her argument that her policy protects families. "Defendant's rental practices and questions were conducted for the safety and welfare of Defendant and her renters. . . . Defendant's practices boil down to a concern for the safety of people, in particular children, which reside in her houses." (Def.'s Mem. in Supp. of Def.'s Resp. to Pls.' Mot. for Partial Summ. J. ("Def.'s Mem.") 15.)

Further, her suggestion that the first amendment allows her to make discriminatory statements while conducting her business of renting houses is also unsupported by any law. The FHAA and accompanying regulations clearly prohibit discriminatory statements made with respect to rentals. The court does not read any unlawful limitation on an individual's First Amendment rights in the FHAA.

Plaintiffs showed that Defendant made these discriminatory statements. Her attempts to justify them are unconvincing and do not show a genuine issue of material fact. Defendant argues that she did not discriminate because she never intended the statements to be discriminatory. "Defendant has never refused to rent to anyone, nor has she made a serious statement that she would not rent to families." (Def.'s Mem. 2.) She asserts that over the fifty years in which she has been in the business of renting property, she has considered each applicant "solely on legally permissible grounds." (Def.'s Mem. 5.) She also believes that her policies of asking renters about their families and "steering" them to the appropriate properties are simply an effective business practices.

> In the 50+ years Defendant has rented houses, she has developed the practice of asking the size of the renter's party. If a renter has a large party, Defendant may steer them towards one of her larger rentals. If the person is single, she may steer them toward a smaller rental. In any event, any potential renter is free to view and

Order   15

rent any unit they wish.  Defendant simply tries to assist potential renters locate a unit suitable to their needs.

(Def.'s Mem. 2.)

Defendant, however, ignores the law.  Even if Defendant believed that she did not make discriminatory statements and even if she believed she only considered applicants on legally permissible grounds, the standard is whether an ordinary person would view it that way.  As already discussed, the intent of these statements does not matter, and the Plaintiffs only have to show there was "explicitly differential treatment."  See Bangerter, 46 F.3d at 1501.

Plaintiffs have done so here.  Individuals of the protected class of familial status were asked different questions, discouraged from renting, and subject of discriminatory statements to others.  Defendant has not offered any evidence suggesting there is a genuine issue of material fact.

## V.    Conclusion

Plaintiffs have presented evidence of a prima facie case that Defendant violated the FHAA.  Defendant has not offered any evidence to meet her burden of showing a genuine issue of material fact. Plaintiffs' motion for partial summary judgment (#48) is granted.


DATED this 27 day of January, 2010.


Mark D. Clarke
United States Magistrate Judge


Order    16